UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEISHA JONES,

                    Plaintiff,

          -against-

CITY OF NEW YORK; DEPARTMENT OF
SOCIAL SERVICES COMMISSIONER
STEVEN BANKS; NYC HRA CENTER #18
ASSISTANT DIRECTOR MS. LONGMIRE;
NYC HRA CENTER #18 MANAGER MS.
JENKINS; NYC HRA CENTER #18
EMPLOYEE MS. ARCHIBALD; URBAN
PATHWAYS, INC./OLIVIERI DROP IN
CENTER; HELP USA, INC.,

                    Defendants.

20-CV-6788 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

        Plaintiff, who is proceeding *pro se* and *in forma pauperis*, filed a complaint and unsigned

order to show cause on August 21, 2020, alleging that Defendants violated her constitutional

rights and seeking immediate injunctive relief. (ECF 2, 3.). By order dated August 26, 2020, the

Court denied the order to show cause without prejudice, and directed Plaintiff to amend her

complaint to address deficiencies in her original pleading. Plaintiff has filed an amended

complaint, request for a temporary restraining order, and a letter, and the Court has reviewed

these submissions. (ECF 8-10.) The action is dismissed for the reasons set forth below.

**STANDARD OF REVIEW**

        The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint,

that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B);

*see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must

also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The Court assumes familiarity with the August 26, 2020 order detailing the claims in Plaintiff's original complaint (ECF 5), and thus provides only a brief summary here. Plaintiff filed this complaint under 42 U.S.C. § 1983, setting forth her many negative experiences with the

network of city agencies and nonprofit organizations that offer housing and other assistance to

people who are homeless and seeking permanent housing. Plaintiff alleges that her already

fragile health has been compromised due to the denial of reasonable accommodations and access

to basic necessities, and that Defendants have run "afoul of the law" by "engaging in harassment,

intimidation, tortious interference, invasion of privacy, and intentional infliction of emotional

distress." (ECF 2 at 5.) Plaintiff seeks money damages, "policy changes," and injunctive relief.

In the August 26, 2020 order, the Court construed the complaint as asserting claims under

§ 1983 and the Fair Housing Act (FHA), but determined that the complaint failed to state a claim

because: (1) there is no constitutional right to be housed in a particular type of shelter or even a

well-run shelter; (2) there were insufficient facts to support claims under § 1983 or the FHA;

(3) the complaint did not show that the named defendants were personally involved in violating

Plaintiff's federally protected rights; and (4) the private defendants, simply by being publicly

funded or operating under city contract, were not state actors for the purpose of § 1983 liability.

The Court granted Plaintiff leave to amend her complaint, denied the motion for injunctive relief,

and deferred the decision of whether or not to exercise supplemental jurisdiction under 28 U.S.C.

§ 1367(c)(3). (ECF 5.)

Plaintiff filed an amended complaint naming as Defendants the City Of New York;

Steven Banks DSS Commissioner; NYC HRA Center #18 Assistant Director Ms. Longmire;

NYC HRA Center #18 Manager Ms. Jenkins; NYC HRA Center #18 Employee Ms. Archibald;

Urban Pathways, Inc./Olivieri Drop In Center; and Help USA, Inc.

The amended complaint contains the following allegations. In December 2016, Plaintiff

sought assistance from Urban Pathways (UP), a nonprofit organization. A UP employee told

Plaintiff that the agency could assist her with finding permanent housing. During the intake

process at UP's Olivieri Drop In Center, Plaintiff learned that UP is funded by the New York City Department of Homeless Services (DHS), an agency that Plaintiff sought to avoid because of past negative experiences. Plaintiff "thought she was engaging a non-profit that provided income based affordable housing," but "UP provides housing help for a segment of the homeless population in need of a specific type of subsidized housing." Plaintiff does not need supportive housing, and she alleges that UP engaged in "deceit and fraud."

Plaintiff lists many complaints about UP's intake process. Plaintiff was repeatedly denied copies of the forms she was required to fill out; there was no guarantee that a bed would be available, and Plaintiff discovered that women often ended up sleeping in chairs; she was required to submit to physicals and psychiatric and psychosocial evaluations, some of which were conducted by nurse practitioners who were presumably not qualified to do such work; and false information was "transmitted" from the Olivieri Drop In Center to "DHS/DSS." This list is not exhaustive. Defendants retaliated against Plaintiff for complaining about these and other matters by removing her from the "respite bed" list and threatening to "throw her out" on the street and deny her a bed.

Before the pandemic, Plaintiff needed help relocating to "affordable (income based) housing due to loss of income (physical illness, employment discrimination, depleted cash savings." (ECF 8 ¶ 3.) As a result of the pandemic, Plaintiff sought emergency shelter in June 2020. (*Id.* ¶ 4.) Plaintiff was "forced to register" at a women's congregate shelter in the Bronx, managed by Help USA; that shelter was "disgusting" and had "clear code violations." (*Id.* ¶ 8.) Help USA "thr[ew Plaintiff] out into the street" on June 22, 2020. (*Id.* ¶ 140.) According to Plaintiff, DHS does not meet her "most basic human needs." (*Id.* ¶ 9.) Its "policies, practices, and procedures are . . . counterproductive, punitive, and injurious and cause stress, anger, emotional

distress, nervousness, sleeplessness, and misery among other things. And DSS routinely, intentionally, willfully and wantonly mislead, deny, profile, verbally harass and intimidate adults." (*Id.*)

Plaintiff has "one unsolicited reasonable accommodation (RA) on file with HRA and another was solicited for shorter waits when visiting HRA Center #18 and [she] was seeking a third RA to reduce [her] exposure to COVID-19 while [she] search[ed] for adequate housing." (ECF 8 ¶ 6.) Plaintiff's primary care doctor advocated on Plaintiff's behalf for a private room, but she was denied access to cooking facilities. (*Id.* ¶ 7.)

On June 22, 2020, Plaintiff moved into a "DHS hotel" that is managed by "not-for-profit corporation Westhab." (*Id.* ¶ 141.) The accommodations are were satisfactory to Plaintiff, but security staff regularly enter Plaintiff's room in "the middle of the night" and while she is showering. Plaintiff was told that it is DHS policy to conduct "a headcount," which has caused Plaintiff stress and is an invasion of her privacy.

Between May 2019 and June 2020, Plaintiff was harassed and verbally "intimidated," and Defendants falsified case notes and denied Plaintiff's requests for emergency assistance for "storage payments," which put Plaintiff's "storage units into auction status twice," and failed to process Plaintiff's reasonable accommodation for "shorter wait times for several months, among other things." (*Id.* ¶ 64.) Moreover, HRA called the storage unit without Plaintiff's permission, and someone forged her signature or initials on various forms. Plaintiff was not informed about policy changes with respect to the storage payments. Plaintiff's cash benefits were also "wrongfully reduced." Plaintiff "requested and attended numerous, almost monthly, fair hearings on the same issues." (*Id.* ¶ 77.) The fair hearing is "hit or miss depending on the ALJ assigned." (*Id.* ¶ 76.)

Plaintiff asserts claims of "fraud, deliberate indifference, invasion of privacy, tortious interference, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of fiduciary duty, breach of contract, misrepresentation, discrimination, harassment." (*Id.* ¶¶ 173-76.) Plaintiff seeks money damages. Plaintiff also filed a "request for a temporary restraining order" directing "Defendant City of New York /DSS Commissioner Banks" to: (1) provide her with a "single point of contact" at HRA to "assist" her with "exiting the system"; (2) acknowledge her complaints filed with HRA Constituency Services; (3) instruct Westhab to stop entering and searching her room in the middle of the night and to not transfer her; and (5) and direct Westhab, Help USA, and the Olivieri Drop In Center to provide her with all her paperwork. (ECF 9.) Plaintiff also submitted a letter stating that a Department of Homeless Services employee had threatened to transfer her to a different shelter unless she signed forms with which she did not agree, and she asserts that she "cannot be transferred to substandard accommodations with [her] medical conditions." (ECF 11.)

## DISCUSSION

**A.    Previously Considered Claims**

Plaintiff asserts claims in the amended complaint about conditions in the housing provided to her that she previously asserted in the original complaint. By order dated August 25, 2020, those claims were dismissed for failure to state a claim. They are dismissed again here for the same reasons stated in that order. In summary, while the Court is sympathetic to Plaintiff's plight, she does not have a constitutional right to a particular housing assignment or to housing of a particular quality, and the amended complaint does not contain facts showing that she was discriminated against because of a disability or that she was denied reasonable accommodation for a disability. Moreover, the facts asserted in the amended complaint do not give rise to an inference that any of the named Defendants violated Plaintiff's federally protected rights.

**B.    Newly Asserted Claims**

**1.    Retaliation**

Plaintiff asserts that Defendants retaliated against her for refusing to sign forms and for lodging complaints. To state a First Amendment retaliation claim, a private citizen must allege that (1) she has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by her exercise of that right; and (3) defendants' actions effectively chilled the exercise of her First Amendment right. *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) ("Regardless of the factual context, [courts] have required a plaintiff alleging retaliation to establish speech protected by the First Amendment.").

Assuming that Plaintiff is entitled to First Amendment protection for her advocacy on issues of personal concern to her, she nevertheless fails to plead facts suggesting that Defendants' actions were "motivated or substantially caused" by her exercise of his First Amendment rights. In other words, Plaintiff's complaint does not allege facts suggesting that there was a causal link between her lodging of complaints and her failure to obtain the type of assistance she was demanding. Plaintiff also fails to plead facts showing that Defendants' actions effectively chilled the exercise of her First Amendment rights, and her allegations thus fail to state a claim that Defendants violated her rights under the First Amendment.

**2.    Procedural Due Process**

Plaintiff asserts that there have been delays and other problems with a number of her benefits, including storage payment and cash benefits. The Court understands Plaintiff's claim to be that she was deprived of procedural due process, which violated her rights under the Fourteenth Amendment.

To state a § 1983 due process claim, a plaintiff must "demonstrate that [she] possessed a protected liberty or property interest, and that [she] was deprived of that interest without due process of law." *Hynes v. Squillance*, 143 F.3d 653, 658 (2d Cir. 1998); *see Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (citations omitted). Generally, due process requires some kind of hearing prior to a final deprivation of an individual's liberty or property interest. *See Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299 (1981); *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003). "[W]here a plaintiff alleges a deprivation of property in violation of the due process clause, the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts. If so, there will be no claim before the federal court, whether or not plaintiff took advantage of the state procedure." *Vialez v. New York City Hous. Auth.*, 783 F. Supp. 109, 114 (S.D.N.Y. 1991).

Public assistance benefits "have long been afforded constitutional protection as a species of property protected by the federal Due Process Clause." *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005) (quoting *Goldberg*, 397 U.S.at 262 & n.8); *see also M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 432 (S.D.N.Y. 2006) ("Persons who are qualified to receive welfare benefits have a legitimate claim of entitlement to such benefits."). In the context of public assistance benefits, due process typically requires predeprivation notice and an opportunity to be heard. *Goldberg*, 397 U.S. at 260-61; *Hart v. Westchester Cnty. Dep't of Soc. Servs.*, No. 98-CV-8034 (KNF), 2003 WL 22595396, at *4 (S.D.N.Y. 2003). However, where a person is deprived of a property right because of a random and unauthorized act, rather than through the operation of established state procedures, the Due Process Clause is satisfied if the state provides an adequate

postdeprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that a "random and unauthorized" deprivation of a protected interest does not result in a violation of procedural due process, as long as the state provides an adequate postdeprivation remedy); *Rivera–Powell v. New York City Bd. of Elections,* 470 F.3d 458, 465 (2d Cir. 2006) (holding that "[w]hen the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy.").

New York State law provides such a postdeprivation remedy. Under New York law, access to postdeprivation process such as a fair hearing pursuant to N.Y. Soc. Serv. Law § 22 and 18 N.Y.C.R.R. § 358, and the availability of further review in the state courts in an Article 78 proceeding have been found to be constitutionally adequate procedures to challenge adverse determinations in connection with government entitlement programs. *See Banks v. HRA*, 2013 WL 142374, at *3 (E.D.N.Y. Jan. 11, 2013); *Vapne v. Eggleston*, No. 04-CV-565 (NRB), 2004 WL 2754673, at *5 (S.D.N.Y. Dec. 1, 2004).

Although Plaintiff asserts that public assistance and other benefits were terminated, reduced, or delayed without notice, she also asserts that she has had fair hearings to address these occurrences. Plaintiff does not allege that she sought review of any of these matters in state court through Article 78 proceedings. As Plaintiff has participated in fair hearings, and could file an Article 78 proceeding in state court regarding the termination of her benefits, *see* N.Y.C.P.L.R. § 7801 *et seq.*, she fails to state a claim for denial of due process.

## C.   **Municipal Liability**

In the amended complaint, Plaintiff added the City of New York as a defendant. When a plaintiff sues a municipality under § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v.*

*Thompson,* 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011).

In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997).

Plaintiff fails to allege any facts that suggest that a policy, custom, or practice of the City of New York caused a violation of Plaintiff's federal constitutional rights. The Court therefore dismisses any claims under § 1983 against the City of New York. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**D.      Supplemental Jurisdiction**

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by

enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**E.      Denial of Leave to Amend**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because it does not appear that the defects in Plaintiff's amended complaint can be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.[1]

**CONCLUSION**

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The application for injunctive relief is denied as moot, and the Clerk of Court is directed to terminate it. (ECF 9.)

SO ORDERED.

Dated:    January 5, 2021
          New York, New York

                                        _____
                                        Louis L. Stanton
                                        U.S.D.J.

---

[1] While the Court is not dismissing any claims on this basis, it appears that some of Plaintiff's claims are untimely. The statute of limitations for § 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). Some of Plaintiff's claims arose in 2016 and the first half of 2017, more than three years before Plaintiff filed this complaint.